**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue
Suite1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com

*Attorneys for Plaintiff Dana Newell*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Dana Newell, a single woman, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Arizona Board of Regents; Cynthia Lietz, a married woman; Jonathan Koppell, a married man; | **(Demand for Jury Trial)** |
| Defendants. | |

Plaintiff Dana Newell, for her Complaint against Arizona State University c/o the Arizona Board of Regents alleges as follows:

**JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant the Court's federal question jurisdiction as set forth in 28 U.S.C. §1331 and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2611, *et. seq.*

2. The complained upon actions were committed within the State of Arizona, on or around Arizona State University's premises located in Maricopa County, State of Arizona. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff Dana Newell ("Plaintiff" or "Newell") resides in Maricopa County, Arizona, and is a single woman.

4. Plaintiff Newell was an "employee" of Arizona State University within the meaning of 29 U.S.C. § 2611, *et. seq.,* and at all times material to this action.

5. Defendant Arizona Board of Regents ("ABOR") is a public entity which governs, manages and controls Arizona State University ("ASU"). Defendant Arizona Board of Regents (ABOR) is the governing board for and including Arizona State University. ABOR is a corporate body that may be sued.

6. Defendant Cynthia Lietz ("Defendant Lietz") is a married woman who resides in Maricopa County, Arizona. All actions with regard to Plaintiff were done on her own behalf and on behalf of her marital community, and were done within the course and scope of her employment with and in her official capacity as an employee of Defendant ABOR/ASU.

7. Defendant Jonathan Koppell, Dean of the College ("Defendant Dean Koppell") is a married man who resides in Maricopa County, Arizona. All actions with regard to Plaintiff were done on his own behalf and on behalf of his marital community, and were done within the course and scope of his employment with and in his official capacity as an employee of Defendant ABOR/ASU.

8. Jurisdiction is proper in this Court for all claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2611 *et seq*. Venue is proper in this Court.

**BACKGROUND**

9. Plaintiff Dana Newell was employed with Arizona State University ("ASU") for over seventeen (17) years from about September 25, 2000 up to her termination on November 27, 2017 (effective January 26, 2018).

10. Plaintiff Newell began her career with ASU initially as the Director of the Women in Engineering and Science program in 2000.

- 2 -

11.     At the time of her termination Plaintiff Newell held the position of Assistant Dean of the College of Public Service and Community Solutions and oversaw five direct reports and the division of student and academic affairs for the College.

12.     Throughout her employment Plaintiff Newell excelled and exceeded ASU's work expectations and consistently achieved the highest performance evaluation rankings.

13.     Plaintiff Newell won several awards during her tenure at ASU including, Supervisor of the Year, TRIO advocate of the Year, and Sun Devil Advocate of the Year.

14.     Plaintiff Newell was one of the most trusted and honored members of the College of Public Service and Community Solutions leadership team, and received letters of support from faculty, staff, and former students demonstrating how she was well respected throughout the University community.

15.     At no time prior to her termination, had Plaintiff Newell been made aware of any performance issues or placed on any corrective action plan or received any type of negative performance reviews.

16.     Plaintiff Newell was ill in the Spring of 2016 which resulted in various medical complications. Plaintiff Newell utilized her personal time off and vacation time intermittently for approximately three months to obtain care for her illness and attend multiple doctors' visits.

17.     Even though she was not feeling at all well, Plaintiff Newell's strong sense of commitment to ASU drove Plaintiff Newell to maintain her same work standards she had adhered to throughout her career.  She would work every day, including most Saturdays during the College's busy orientation months.

18.     Even though Plaintiff was using her sick leave she began to sense that that her Supervisor, Defendant Cynthia Lietz was unhappy about her about taking time off for her illness.

19. Defendant Lietz' unhappiness turned into harassment after Plaintiff Newell's father suffered a seriously debilitating fall and fractured his spine in late October 2016 which required Plaintiff Newell to take protected intermittent FMLA to help care for her father.

20. On about December 2016 Plaintiff Newell requested, qualified and was approved to take intermittent FMLA leave to help care for her father. All the appropriate ASU personnel, including Defendant Lietz approved Plaintiff Newell's FMLA leave. Plaintiff Newell was only taking one or two intermittent days of FMLA leave every couple of weeks and traveled to Lake Montezuma, Arizona, to assist her mother with her father's ongoing in-home care.

21. Even though Plaintiff Newell arranged for a staff member to cover attending meetings on her behalf, Defendant Lietz constantly harassed and pressured Plaintiff Newell about her time off work. Defendant Lietz sent Plaintiff Newell emails during Plaintiff Newell's FMLA leave regarding meetings and other tasks that had already been addressed. She also sent emails stating Plaintiff Newell was not doing her job because she was not attending meetings on days when Defendant Lietz was well aware Plaintiff Newell was on medical leave.

22. On other occasions, Defendant Lietz asked Plaintiff Newell to do certain tasks in the weekly meetings, which Plaintiff Newell already completed, then Defendant Lietz would say she never told Plaintiff Newell to do the task.

23. Defendant Lietz continued to pressure Plaintiff Newell about taking time off for FMLA, and out of fear of losing her job and Defendant Lietz' mounting pressure, Plaintiff Newell stopped taking FMLA leave by February 2017, even though her mother continued to need her help caring for her incapacitated father.

24. Defendant Lietz conducted Plaintiff Newell's performance evaluation on about April 6, 2017, and took Plaintiff Newell's employee self-evaluation, which Plaintiff

Newell had prepared for Defendant Lietz also in previous years for review, and changed the description of Plaintiff Newell's job and responsibilities substantially reducing duties from previous years. Defendant Lietz gave Plaintiff Newell a lower overall performance ranking of "4" (1 being the lowest, 5 the highest), and also issued Plaintiff Newell even lower scores of "3s" and "4s" in the seven job duty categories.

25. Plaintiff Newell was shocked and felt blind-sided by Defendant Lietz' lower ranking scores and felt retaliated against for taking FMLA leave to care for her father, particularly because nothing about Plaintiff Newell's job, performance, or quality of work had changed in the previous year, nor had Plaintiff Newell been made aware of any performance issues or placed on any written performance improvement plan.

26. Most notably, Defendant Lietz had previously issued Plaintiff Newell two high ranking evaluations in 2014 and 2015, with overall performance ratings of "5". In fact, for Plaintiff Newell's work performance of 2015, Defendant Lietz unequivocally praised Plaintiff Newell's work writing, "I am grateful for Dana's leadership, diligence, flexibility and commitment to our college. Her values fit the vision of our college and her contributions are substantial. There are many examples of initiatives that would not have been advanced without her. I rely heavily on Dana and put simply, I could not do my job without her."

27. In Defendant Lietz' March 11, 2015 Evaluation of work period July 1, 2014 to June 30, 2015, Plaintiff Newell received a perfect overall rating of "5". In the seven job duty categories, Plaintiff Newell received six "5" ratings and one "4" rating in the Respectful Communicator category. The "Fiscal Responsibility…" category was replaced with the "Resourceful, Committed to Sustainability" category, and Plaintiff Newell received a "5" rating.

28. In Defendant Lietz' April 15, 2016 Evaluation of worked performed in 2015, Plaintiff Newell received a perfect overall rating of "5". In the seven job duty categories, Plaintiff Newell received six "5" ratings and one "4" rating.

29. Defendant Lietz' retaliatory conduct against Plaintiff Newell following her FMLA leave is demonstrated in Defendant Lietz's evaluation dated April 6, 2017 for work performed in 2016. As noted, Defendant Lietz gave Plaintiff Newell a lower overall rating of "4". Although a high rating by ASU's standards, a "4" rating was a lower score nonetheless by Plaintiff Newell's standards as she consistently worked for and received the highest overall ranking of "5". Further, Defendant Lietz issued Plaintiff Newell the lowest ratings Plaintiff Newell had ever received in her seventeen years at ASU, in the other job duty categories and for the first time she received only one "5" rating, and received "4s" and "3s" ratings in areas Plaintiff Newell had excelled and exceed in her prior evaluations by Defendant Lietz, as demonstrated below:

| Job Duty Categories<br>Rating Scale 1 – 5  (1 lowest, 5 highest) | 2015 | 2016 | 2017 |
|---|---|---|---|
| Service-oriented, Positive Attitude, Helpful | 5 | 5 | 4 |
| Trustworthy, Adheres to Ethics and Compliance Standards | 5 | 5 | 5 |
| Collaborative, Team-oriented | 5 | 5 | 4 |
| Productive, Commitment to ASU | 5 | 5 | 3 |
| Flexible, Adaptable | 5 | 5 | 4 |
| Respectful Communicator | 4 | 5 | 3 |
| Resourceful, Committed to Sustainability | 5 | 4 | 4 |
| **Overall Rating** | **5** | **5** | **4** |

30. Most of the lower scores in the 2017 review were in areas where she had always received "5" ratings from Defendant Lietz and most troubling was the "3" rating she received for productivity and commitment to ASU. The low ratings clearly showed Defendant Lietz' antagonism towards Plaintiff Newell's use of protected leave as there had never before been a question about Plaintiff's productivity and commitment to ASU.

Plaintiff Newell's excellent work performance prior to Defendant Lietz' review is further supported in Plaintiff Newell's performance evaluations from 2000 to 2014.

31. On about April 24, 2017, Plaintiff Newell reported Defendant Lietz' harassment and retaliation to Ms. Shimara Mizell in ASU's internal Human Resources. Plaintiff Newell reported Defendant Lietz' harassment while Plaintiff Newell was on FMLA leave and retaliation for taking FMLA leave and issuing Plaintiff Newell the lowest performance ratings in her entire seventeen year career at ASU.

32. Plaintiff Newell learned that ASU's Human Resources had no record of Defendant Lietz submitting her April 6, 2017 evaluation with low scores to Plaintiff Newell.

33. On April 28, 2017, Plainitiff submitted her Statement of non-concurrence of Defendant Lietz April 6, 2017 performance evaluation anddelineated Defendant Lietz' harassment and retaliation for taking FMLA leave and significantly reducing Plaintiff's job duties and issuing Plaintiff lower performance evaluations.

34. Ms. Mizell from HR met with Plaintiff Newell at the end of April 2017 and discussed the Statement of non-concurrence to Defendant Lietz' evaluation. Plaintiff Newell further reported her concerns of the retaliation and when asked what outcome she wished to achieve, Plaintiff Newell suggested FMLA training for Defendant Lietz and requested re-assignment to another supervisor out of fear of Defendant Lietz' continued retaliation.

35. During a May 2017 meeting Defendant Lietz did inform Plaintiff that the College had been given permission to hire another Associate Dean of Academic Affairs and that Plaintiff Newell would thereafter report to the newly hired Associate Dean.

36. During May 2017, Plaintiff's father contracted MRSA which led to a severe infection resulting in surgery that left a six inch wound on his lower right arm. Following his week stay in the hospital, Plaintiff's mother needed Plaintiff's help to provide home

care for her father's wound and continuing care for his back injury. Naturally, Plaintiff again requested and was approved for intermittent FMLA leave. Plaintiff Newell would only take one day off every couple of weeks and again traveled to Lake Montezuma, Arizona to help her mother care for her father.

37. On May 10, 2017 while on FMLA leave, her parents' physician discussed with Plaintiff the stress her mother was under as a primary care giver for her father, and suggested Plaintiff take more FMLA leave to help her mother. The doctor reassured Plaintiff that nothing was going to happen to her professionally stating because it would be a violation of FMLA.

38. Following the doctor's serious recommendation, Plaintiff submitted the FMLA paperwork to Defendant Lietz on May 11, 2017.

39. Shockingly the very next day, Plaintiff's mother passed away on May 12, 2017 from a heart attack.

40. Plaintiff took bereavement leave and sick leave to be with her father and brother and handle all the funeral arrangements. Plaintiff Newell moved her father into her home in Phoenix where Plaintiff Newell lived to help care for her father.

41. Plaintiff returned to work and during a particularly difficult day in mid-June 2017 Plaintiff naturally continued to grieve over the recent loss of her mother and emailed Defendant Lietz requesting one day off. Plaintiff was extremely vulnerable and honestly expressed she was feeling depressed and very sad over the loss of her mother and feeling overwhelmed in her new role as caretaker for her father.

42. Defendant Lietz appeared to provide a very different story to her boss Defendant Jonathan Koppell, the Dean of the College. Defendant Dean Koppell met with Plaintiff on June 26, 2017 with Ms. Mizell from HR also present. Defendant Dean Koppell said "so we need to have a conversation about you being unhappy in your job", and

discussed Plaintiff's email to Defendant Lietz requesting a day off because she felt depressed.

43. Plaintiff explained it was true she felt depressed because her mother had recently died, and clarified she was very happy in her job.

44. Defendant Dean Koppell asked about Plaintiff being unhappy with Defendant Lietz.

45. Plaintiff told Defendant Dean Koppell she previously reported her concerns to HR about Defendant Lietz' retaliation toward Plaintiff for taking FMLA leave.

46. Defendant Dean Koppell told Plaintiff that would not work for him, that the leadership team had to get along, and even when Plaintiff Newell expressed her loss of trust in Defendant Lietz due to Defendant Lietz' conduct, Defendant Dean Koppell pressured Plaintiff to back down from her concerns about Defendant Lietz. Defendant Dean Koppell stated he trusted Defendant Lietz and expected Plaintiff to do the same.

47. Plaintiff felt pressured and bullied by Defendant Dean Koppell in the June 26, 2017 meeting and troubled over Defendant Dean Koppell using Plaintiff's depression from her mother's death and reports of retaliation against her in their meeting.

48. Following the meeting Plaintiff sought help from Mr. Keven Salcido, ASU's VP for Human Resources and they agreed to meet in early August, upon Plaintiff's return to work from protected FMLA leave.

49. While on her scheduled protected leave Plaintiff felt upset and emailed Defendant Lietz and Defendant Dean Koppell about not appreciating having her openness about feeling depressed over her mother's death used against her in the June 26 meeting and stated she would no longer share any illness she may have when taking a sick day, as ASU employees are not required to disclose illnesses when needing a day off.

50. Plaintiff met with Mr. Kevin Salcido and Ms. Margot Monroe, both from ASU HR in early August 2017 and    recounted the events, her reports of retaliation for

using FMLA, and feeling bullied by Defendant Dean Koppell in the June 26th meeting and how her natural feelings of depression over the loss of her mother and feeling overwhelmed in caring for her father were used against her in the June 26 meeting. Mr. Salcido stated he would have someone from HR meet with Defendant Lietz to train her on FMLA and that in the meantime Plaintiff would have to continue to report to Defendant Lietz.

51.  Only a couple weeks after Plaintiff's early August 2017 reports of bullying and retaliation to Mr. Salcido and Ms. Monroe, Defendant Dean Koppell, Defendant Lietz and Ms. Mizell from HR met with Plaintiff in mid-August 2017. Plaintiff was handed a letter outlining concerns against Plaintiff that they: 1) did not like the sign Plaintiff had on her office door; 2) that they were concerned about Plaintiff's communications; and 3) that Plaintiff needed to work 8-5, Monday through Friday.

52.  Plaintiff did not understand why these unsupported and frivolous concerns were brought against her and immediately felt very uneasy and unsure about her job. Plaintiff again felt bullied by Defendant Dean Koppell and felt he was trying to intimidate Plaintiff for her complaints about a retaliatory workplace due to her using FMLA leave to care for her father.

53.  The letter was not a performance improvement plan nor any other tool to improve performance and suspiciously Plaintiff was also told the letter would not be part of her permanent employment record and that it would not leave their office. Concerned about losing her job Plaintiff did not know what to do, sat quietly then asked for some time to reflect and respond to their letter.

54.  In early August 2017, Plaintiff Newell met with her Supervisor Defendant Lietz and took the following action addressing the concerns listed in the letter:

> 1. The door sign: The sign read "If your intentions are not kind, please let me rest," and had been on Plaintiff's door since January 2017. Plaintiff explained it was commonly known, that Plaintiff had gotten the

saying off a funny Buddhist website, and explained that since her job involved student discipline, the staff together with Plaintiff thought it was funny, Plaintiff said in the interest of everyone moving forward she took the sign off her door. No one had complained about the door sign until the August 2017 meeting.

2. Communication concerns: Defendant Lietz expressed her concerns over the "tone" of Plaintiff's email to Mr. Salcido in HR. Plaintiff explained she met with Mr. Salcido and clarified that Defendant Lietz had misinterpreted the tone and asked if there was another example of the communication concerns. Defendant Lietz brought up Plaintiff's email about feeling that her openness about her depression was being used against her. Plaintiff expressed she continued to believe the June 26 meeting was very inappropriate, but she was willing to forgive and move on.

3. Working 8-5: Plaintiff explained that in her seventeen years at ASU she typically worked 10-hour days almost every day, and rarely worked a 8 to 5, 40-hour week and that Plaintiff's calendar was always up to date. Prior to the meeting with Defendant Lietz, Plaintiff Newell checked with her administrative assistant, who stated that at no time had anyone come to her asking about Plaintiff Newell's whereabouts or questioning Plaintiff Newell's schedule. Defendant Lietz acknowledged that in fact she had not checked on Plaintiff Newell's work time calendar.

Ultimately, Plaintiff Newell stated they needed to try to move forward and she was willing to if Defendant Lietz was willing. They both agreed, laughed a little and Defendant Lietz gave Plaintiff Newell a hug and Plaintiff Newell left the office.

55. During the first week of October 2017, Plaintiff's father hit his head on a door, suffered a serious contusion, some cognitive loss, was hospitalized and spent about one week in the ER. Plaintiff took protected leave to be with her father at the hospital, and also worked from the hospital answering emails every day.

56. Plaintiff's father was discharged and released to go home, progressively got worse, was falling every night, and by October 31, 2017 was placed in assisted living.

57. During November 2017 work was seemingly going well as Defendant Dean Koppell, Defendant Lietz and Plaintiff and were working together, had weekly recruitment

1  meetings, in addition to Plaintiff's separate weekly meetings with Defendant Lietz, and
2  Plaintiff continued to provide her written updates to Defendant Lietz.

3     58.    Defendant Lietz emailed Plaintiff that an offer had been extended to Ms.
4  Joanna Lucio to serve as Associate Dean and starting January 1, 2018, Plaintiff and her
5  division would report to Ms. Lucio.

6     59.    On November 27, 2017, Plaintiff attended a weekly meeting believing it was
7  a meeting on recruitment, and Defendant Dean Koppell terminated Plaintiff Newell's
8  employment. Ms. Mizell was also present in this meeting. Plaintiff Newell asked on what
9  grounds she was being fired and Defendant Dean Koppell said "I didn't need any." Ms.
10 Mizell handed Plaintiff a dismissal letter with no reason provided in the letter for
11 Plaintiff's termination.

12    60.    Plaintiff visited her father on November 28, 2017 and he naturally felt sad
13 and blamed himself for Plaintiff's termination because Plaintiff had to take care of him.
14 Soon after, Plaintiff's father passed away on January 5, 2018.

15    61.    Plaintiff received no negative feedback relating to her job performance or
16 any indication that her job was in jeopardy. Her job appears to only be in jeopardy after
17 she began to use her FMLA leave to care for her father and when she objected to her
18 supervisor's lowered ratings for what she believed was retaliation for using protected
19 ongoing FMLA leave to care for her father.

**COUNT ONE**

**(VIOLATION OF THE FMLA)**

22    62.    Plaintiff realleges all the allegations fully set forth above.

23    63.    All Defendants are employers as defined by the FMLA. 29 U.S.C.
24 §2611(4)(A) and obligated to conform with the FMLA as it relates to the care of Plaintiff's
25 father.

26    64.    Plaintiff is a covered employee under the FMLA.

65. Plaintiff was forced to take protected FMLA qualifying leave due to her father's serious illness, and pursuant to her rights under the FMLA.

66. The FMLA guarantees that an employee taking leave will not result in the loss of job security or in other adverse employment actions.

67. The FMLA provides job security and leave entitlements for employees who need to take absences from work for personal medical reasons to care for their newborn babies, or to care for family members for serious illnesses.

68. Defendants retaliated against Plaintiff in violation for her use of FMLA leave for the care of her father and for her complaints of Defendants Lietz' and Dean Koppell's retaliation related to her taking FMLA leave for her father, when she was bullied, harassed and ultimately terminated on November 27, 2017.

69. Defendants' actions violated the FMLA by failing to retain Plaintiff after her taking FMLA qualified leave to care for her parents and terminating her employment.

70. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered and continues to suffer economic damage in the form of lost wages and the value of job benefits.

71. Defendants acted willfully in their violation of the FMLA in retaliating against Plaintiff thereby entitling her to a doubling of the damages set forth above as liquidated damages as authorized by 29 U.S.C. § 2617(a)(1).

72. Plaintiff is entitled to an award of attorneys' fees incurred in pursuing he claims under the FMLA.

**WHEREFORE**, Plaintiff requests that the Court enter Judgment against Defendants, individually and jointly, as follows:

1. For Special and General damages for both past and future lost wages as well as the value of job benefits to be proven at trial;

2. An award of liquidated damages as provided under the FMLA;

1  3. Attorney's fees;

2  4. Costs of suit;

3  5. Prejudgment and post-judgment interest; and

4  6. For such other relief as this Court deems just and proper.

## JURY REQUEST

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 18th day of June, 2018.

    SCHLEIER LAW OFFICES, P.C.

    /s/ Bradley H. Schleier
    Bradley H. Schleier
    3101 North Central Ave., Suite 1090
    Phoenix, Arizona 85012
    *Attorneys for Plaintiff Dana Newell*